IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERENCE J. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-07-218-F |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Terence J. Johnson ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying, in part, Plaintiff's application for supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

**Administrative Proceedings**

Plaintiff initiated these proceedings by protectively filing his application seeking supplemental security income payments in January, 2004, alleging that he became disabled as a result of a fractured back and right hip, an injured left shoulder, and thigh and foot burns suffered in a December 1, 2003, automobile accident [Tr. 57, 58 - 59 and 65]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 35 - 37 and 40 - 41]; at Plaintiff's request an Administrative Law Judge ("ALJ") conducted a hearing in November of 2005 where testimony was given by Plaintiff, who appeared with his

attorney, and a vocational expert [Tr. 42 and 229 - 285]. The ALJ subsequently issued a partially favorable decision finding that while Plaintiff was disabled within the meaning of the Social Security Act from January 20, 2004 – the date of the protective filing of his claim – through April 30, 2005, medical improvement related to Plaintiff's ability to work occurred as of May 1, 2005, and that Plaintiff has been able to perform a significant number of jobs in the national economy since that date [Tr. 19 - 30]. Consequently, the ALJ concluded Plaintiff's disability ended on April 30, 2005. *Id.* The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 4 - 6], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Plaintiff's Claims of Error**

Plaintiff first maintains that the ALJ's finding of medical improvement is both unsupported by substantial evidence and legally insufficient and, second, that the ALJ erred in failing to order consultative examinations requested by Plaintiff's counsel.

**Analysis**

**Medical Improvement**

The ALJ's written review of the medical records discloses that on December 1, 2003, Plaintiff, then twenty-one (21) years old, was an unrestrained driver in a rollover motor vehicle accident; he was ejected from the vehicle [Tr. 23 and 25]. Hospital records reflect that Plaintiff suffered from a right acetabular[1] fracture, right transverse process[2] fracture, and full thickness burns to his right thigh and left foot [Tr. 23 - 24]. Subsequent plastic surgeries involving skin grafting, use of a wheelchair and walker, extensive rehabilitation, an infected and poorly healing foot wound resulting in exposed tendons, skin graft rejection, osteomyelitis,[3] and MRSA[4] were all noted by the ALJ [Tr. 23 - 25] and summarized as follows:

> The medical evidence reveals the claimant sustained multiple injuries in a motor vehicle accident on December 1, 2003, which required hospitalization, rehabilitation of 14 days, use of a wheelchair for about 6

---

[1] The acetabulum is "[a] cup-shaped depression on the external surface of the hip bone, with which the head of the femur articulates." *Stedman's Medical Dictionary* 11 (28th ed. 2006).

[2] The transverse process of a vertebra is "a bony protrusion on either side of the arch of a vertebra . . . which functions as a lever for attached muscles." *Stedman's Medical Dictionary* 1567 (28th ed. 2006).

[3] Osteomyelitis is "[i]nflamation of the bone marrow and adjacent bone." *Stedman's Medical Dictionary* 1391 (28th ed. 2006).

[4] MRSA is the "[a]bbreviation for methicillin-resistant *Staphylococcus aureus*." *Stedman's Medical Dictionary* 1232 (28th ed. 2006).

weeks, and use of a walker.  He underwent five or six surgeries to have skin grafts placed; however, his left foot skin graft did not heal properly, became infected, and went into osteomyelitis.  The claimant was hospitalized again for about six weeks, from June 28 through August 13, 2004.

[Tr. 25].

The ALJ concluded that from January 20, 2004 – the date of Plaintiff's protective filing of this claim – through April 30, 2005, Plaintiff "had the residual functional capacity[5] to perform less than sedentary exertional work without weight bearing and frequent inability to attend work due to the need for medical treatment." [Tr. 23]. Because there were no jobs in the national economy that Plaintiff could have performed, the ALJ found him to be disabled for this period of time [Tr. 26].  As of May 1, 2005, however, the ALJ found the evidence showed a medical improvement[6] in Plaintiff's condition which was directly related to his ability to work, concluding that Plaintiff now has the RFC for sedentary work [Tr. 27].  The ALJ imposed the following limitations on Plaintiff's ability to perform such sedentary work: he can stand and/or walk for thirty minutes at a time for a total of two hours in an eight hour work day, he can sit for forty-five minutes at a time for a total of six hours in an eight hour work day and, he can only stoop occasionally.[7]  *Id.*

---

[5]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. § 416.945 (a) (1).

[6]*See* 20 C.F.R. § 416.994 (b) ("We must determine if there has been any medical improvement in your impairment(s) and, if so, whether this medical improvement is related to your ability to work."); *Sheperd v. Apfel,* 184 F.3d 1196, 1200 (10th Cir. 1999) (the medical improvement standard is applicable to cases involving a closed period of disability).

[7]In formulating Plaintiff's RFC, the ALJ specifically relied on Plaintiff's testimony at the administrative hearing:

(continued...)

The ALJ's analysis was in keeping with the two-fold medical improvement test explained in *Sheperd v. Apfel,* 184 F.3d 1196 (10th Cir. 1999):

> To apply the medical improvement test, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled.  Then, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision.  The ALJ must then compare the new RFC with the RFC before the putative medical improvements.  The ALJ may find medical improvement related to an ability to do work only if an increase in the current RFC is based on objective medical evidence.

*Id.* at 1201 (citations omitted).  It is Plaintiff's contention, however, that he remains disabled and that the ALJ's medical improvement finding lacks legal and evidentiary support.

Specifically, Plaintiff maintains that "the ALJ's finding that medical improvement occurred as of May 1, 2005 lacked a proper basis in objective medical evidence (or logical reasoning) since it was based solely on findings from a single February 2005 medical visit related only to [Plaintiff's] right hip (with May 1, 2005 only being referenced as the date [Plaintiff] began an unsuccessful work attempt)." [Doc. No. 20, p. 15].  Contrary to Plaintiff's argument, however, the report of Plaintiff's February, 2005 emergency room examination did not provide the *only* objective medical evidence referenced by the ALJ

---

7(...continued)
At the hearing, the claimant testified that he could stand for 20-30 minutes before he had pain in his left foot, could walk 1/4 mile before he had pain in his left foot, could sit for 30-45 minutes before he had pain in his lower back, could lift 60-80 pounds once only, could lift 20-30 pounds during a day, [and that] bending and stooping caused pain[.]

[Tr. 28 and 255 - 258].

in support of his finding that medical improvement had occurred; instead, as the ALJ plainly stated, it provided the *last* medical evidence [Tr. 27].

The ALJ's review of Plaintiff's course of treatment and history reveals that Plaintiff's various injuries gradually resolved in stages. By March of 2004 [Tr. 24], Plaintiff's "right acetabulum posterior wall fracture, with associated right transverse process[8] fractures of the lower lumbar spine . . . show[ed] excellent signs of fracture healing." [Tr. 184].[9] As to the injuries to his foot, Plaintiff argues the "the ALJ failed to discuss or explain how [Plaintiff's] significantly painful infection of his left foot causing tissue granulation, exposed tendons, necrosis, bony callus formation, and osteomyelitis (bone inflammation) requiring a purportedly six week admission to the hospital for a third skin graft from June through August 2004 had improved such that he could successfully return to work by May 2005." [Doc. No. 20, p. 13]. Even Plaintiff, however, acknowledges that physician's notes dated September 24, 2004, showed Plaintiff's foot to be "healing well." *Id.* at 14.[10] And, as with Plaintiff's healing fractures, this report of objective evidence of improvement in the condition of Plaintiff's foot was documented in the ALJ's decision [Tr. 25 and 28].

---

[8]Plaintiff acknowledges in his brief that this evidence demonstrates that what he terms his "right hip fracture" – in fact, his acetabular fracture – had healed as of March, 2004 [Doc. No. 20, p. 14]. Nonetheless, while the March 1st report [Tr. 184] – a report specifically relied upon by the ALJ – clearly refers to both the acetabulum and associated transverse process fractures, Plaintiff inexplicably argues the "the ALJ failed to discuss the lack of objective medical evidence indicating that [Plaintiff's] transverse process fracture had healed." *Id.*

[9]The radiology report in the exhibit specifically referenced by the ALJ shows that fracture was not seen on March 1, 2004 [Tr. 187].

[10][Tr. 211].

The February of 2005 OU Medical Center emergency room report – which Plaintiff maintains only pertains to Plaintiff's hip and is the ALJ's sole evidence of medical improvement – provides objective medical evidence pertaining not just to Plaintiff's hip but to his overall physical status at the time of the examination [Tr. 27 and 223 - 225]. The report, by Brent O. Hale, M.D., shows that Plaintiff presented to the emergency department giving a history of injury resulting from a motor vehicle rollover crash [Tr. 223]. His complaint was of increasing, intermittent pain in his right hip over the previous two days. Apart from these musculoskelatal complaints, *"[n]o other complaints are voiced." Id.* (emphasis added).

The report reflects that Dr. Hale conducted a thorough physical examination of Plaintiff, including his extremities:

> The right hip is tender to palpation in the joint space, itself on deep palpation. Range of motion is decreased secondary to pain. However, the skin is intact. There is no erythema. There are no signs of infection. No signs of edema. Pulses equal bilaterally distally with sensation intact.

[Tr. 224]. As to Plaintiff's complaint of hip pain, the report continues:

> The patient remains stable without further complaint. Right hip x-rays show no acute dislocations or fractures. The joint space appears normal. These findings were explained to the patient. Explained this might, indeed, be secondary to arthritis from the recent hip trauma.

*Id.* Treatment with heat and Motrin was recommended. *Id.*

Thus, this "last medical evidence," [Tr. 27], confirmed that the previously medically documented healing of Plaintiff's fractures and foot had maintained and that no infection had developed; Plaintiff voiced no concerns apart from hip pain, and physical examination was wholly consistent with the resolution of Plaintiff's injuries.

While the ALJ might have found medical improvement occurred on an earlier date, this last recorded physical examination provided final objective evidence of significant medical improvement by February 10, 2005, as well as an increase in RFC [Tr. 27 - 28]. By extending Plaintiff's disability status even further – through April 30, 2005, the day before Plaintiff attempted to return to work – the ALJ generously gave Plaintiff the benefit of *any* doubt of medical improvement. From May 1, 2005, until June 1, 2005, Plaintiff attempted to return to work, working eight-hour shifts as a housekeeper, work the vocational expert classified at the medium exertional level [Tr. 28, 265 - 267 and 278]. Although he worked for a month, Plaintiff was ultimately unable to sustain this level of medium work which not only necessitated walking and standing all day but required that he lift and carry a heavy buffer [Tr. 28].[11]

As a final challenge to the ALJ's medical improvement findings and relying on the decisions in *Threet v. Barnhart,* 353 F.3d 1185, 1190 - 1191, fn. 7 (10th Cir. 2003) and *Thompson v. Sullivan,* 987 F.2d 1482, 1489 - 1490 (10th Cir. 1993), Plaintiff argues that the ALJ "improperly relied on [Plaintiff's] failure to keep various medical appointments[.]" [Doc. No. 20, p. 15]. Unlike in *Threet* and as previously outlined, however, the ALJ here relied upon objective medical evidence in concluding that Plaintiff had regained the RFC for work in the national economy by May 1, 2005. And, unlike in *Threet,* the ALJ documented changes in signs, symptoms and radiology testing in concluding that the medical severity of Plaintiff's impairments had decreased and that

---

[11]By way of contrast with this work, the ALJ limited Plaintiff to sedentary work with the following additional limitations: he can stand and/or walk for thirty minutes at a time for a total of two hours in an eight hour work day, he can sit for forty-five minutes at a time for a total of six hours in an eight hour work day and, he can only stoop occasionally [Tr. 27].

medical improvement had occurred. Moreover, the ALJ did not confuse, as in *Threet,* a lack of medical treatment with objective medical evidence of improvement. Instead, in evaluating the credibility of Plaintiff's subjective complaints as his healing process was confirmed by medical evidence, the ALJ considered, as required, the frequency of Plaintiff's medical contacts [Tr. 28]. *See Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991). Moreover, the undersigned's review of the record and the hearing transcript reveals that contrary to Plaintiff's argument on appeal, he never stated that he missed scheduled medical appointments because he could not afford them. *Compare Thompson,* 987 F.2d at 1489. Neither did he maintain as he now suggests that he missed scheduled medical appointments because he felt like he would not get any better or because of concern over a bone scan.

The ALJ properly applied the medical improvement standard, and his findings are supported by substantial evidence.

### **Consultative Examinations**

The ALJ's decision states:

> The undersigned Administrative Law Judge notes the claimant's attorney requested an orthopedic consultative examination and a psychological consultative examination. The undersigned determines that the treating medical evidence regarding the orthopedic impairments was adequate to adjudicate. In reference to the request for a psychological consultative examination, there was no evidence of depression or other mental impairment. The claimant has not been treated for mental illness, or given any such medications, and did not allege any mental symptoms in testimony at the hearing. Therefore, the undersigned did not grant the above sited [sic] requests.

[Tr. 27, record references omitted]. Plaintiff maintains that the ALJ erred in failing to order the requested examinations, generally asserting "that the record definitively

showed orthopedic impairments, as well as possible mental impairments, and such examinations could reasonably have been expected to be of material assistance in resolving the issue of [Plaintiff's] continued disability [Doc. No. 22, p. 6].

The ALJ could have ordered the requested consultative examinations had he found them necessary for the development of the record. *See* 20 C.F.R. § 416.919a. An examination should be ordered "when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins v. Chater,* 113 F.3d 1162, 1169 (10th Cir. 1997).

In connection with the ALJ's refusal to order a consultative orthopedic examination because the evidence before him was adequate,[12] Plaintiff rehashes the same arguments advanced – and rejected – in connection with the ALJ's claimed error in finding medical improvement: the most resent medical evidence was dated three months before medical improvement was found, the February, 2005 emergency room report dealt only with Plaintiff's hip, there was no objective evidence of medical improvement to Plaintiff's foot, and the ALJ improperly relied upon Plaintiff's failure to keep scheduled medical appointments [Doc. No. 20, pp. 18 - 19]. As previously discussed, the undersigned finds that the "treating medical evidence" before the ALJ was adequate to allow him to render his decision [Tr. 27]; the previously noted medical findings specifically relied upon the ALJ are substantial evidence in support of his conclusion that

---

[12]In other words, the ALJ determined that "the evidence as a whole, both medical and nonmedical, [was] sufficient to support a decision on [Plaintiff's] claim." 20 C.F.R. § 416.919a (b).

Plaintiff was not disabled as of May 1, 2005, and such evidence obviated the need for further development of the record through a consultative examination.

With respect to the need to further develop the record regarding any mental impairment, the record shows that Plaintiff's attorney wrote to the ALJ prior to the administrative hearing stating that

> Today I had my pre-trial with [Plaintiff] and this young man is quite depressed. I respectfully request you send him out for psychological consult. He does not have any money, insurance, or any way to get any further treatment for residuals of car accident, much less Mental Health Counseling.

[Tr. 125]. Then, at the administrative hearing, Plaintiff's counsel inquired how Plaintiff was feeling about his current situation:

> ATTY:   Okay, Well, and how do you feel about all of this? Are you worried? Are you anxious? Does it make you feel sad because you don't know what's going to happen - -
>
> CLMT:   Yeah.
>
> ATTY:   - - and you can't work and - -
>
> CLMT:   I can't do nothing. It's stressful.
>
> ATTY:   I mean you're young. What future do you see is out there right now? Is there any avenue out there that you could get help?
>
> CLMT:   No.
>
> ATTY:   No. All right. Okay. I think that's it.

[Tr. 272 - 273]. After considering counsel's letter, the record, and the testimony at the hearing, the ALJ concluded that there was no evidence of depression or other mental impairment, that Plaintiff had not been treated for a mental illness, that he had not

received medications for mental impairments, and that he had not alleged any "mental symptoms" during the administrative hearing [Tr. 27].

In urging that the ALJ erred by failing to order a consultative psychological examination, Plaintiff first maintains that the ALJ failed to discuss the fact that a Dr. Zimmerman diagnosed him with a closed head injury with memory loss following his rollover accident or that a CT scan showed a possible fracture of Plaintiff's skull [Doc. No. 20, p. 19]. The records reveal that on presentation to the emergency room following his accident, Plaintiff stated that he had no recollection of the accident and that he believed that he might have been knocked unconscious [Tr. 134]. Shelly Zimmerman, D.O., included closed-head injury with memory loss among her *interim* diagnoses [Tr. 135 - 136]. Multiple radiology studies were then conducted, including a CT brain scan [Tr. 150]. Findings from the scan showed:

> The midline structures are not displaced and the ventricular system and basilar cisterns are normal in size, shape and anatomic position. There are no abnormal extraaxial or intraaxial fluid collections or evidence of hemorrhage. Gray-white junction is well-preserved and the sulci are not effaced.
>
> There is a *question* of fracture at the posterior aspect of the right occipital condyle. CT of the atlanto-axial junction may be of benefit if clinically indicated.

*Id.* (emphasis added). The final impression by the physician who reviewed the study was, "Unremarkable brain scan." *Id.* Plaintiff's discharge diagnosis made no reference to a closed-head injury, to memory loss or to a skull fracture [Tr. 126 - 127] and Plaintiff does not point the court to any other mention in the record of any indication or diagnosis of head or brain trauma or to any resulting functional deficit, including memory loss.

Without more, an interim-only diagnosis of a closed-head injury and a question of a fracture does not suggest the reasonable possibility of a mental impairment, and the ALJ did not err by failing to order a consultative psychological examination to further develop the record in this regard.

As to Plaintiff's claim that the ALJ failed to credit his testimony that he felt stress as a result of his physical situation, there is no indication in the record that Plaintiff's stress has limited his ability to perform basic work activities or that any health care provider has suggested that Plaintiff is impaired by depression. The ALJ had no duty to order a consultative mental examination of a claimant who simply expressed that he was worried about what he perceived to be an uncertain future.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by January 2, 2008, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 14th day of December, 2007.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE